IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C-08-00539 MAG |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| v. | |
| JAMES THOMAS IOANNIDIS, | |
| Defendant. / | |

Defendant James Thomas Ioannidis is charged with three Class B misdemeanors: driving under the influence of alcohol (36 C.F.R. § 1004.23(a)(1)), refusal to submit to a chemical test (36 C.F.R. § 1004.23(c)(2)) and failure to maintain control of a vehicle (36 C.F.R. § 1004.22(b)(1)). On October 17, 2008, Defendant filed a Motion to Suppress Evidence. On October 31, 2008, the Government filed an opposition. No reply was filed. On November 25, 2008, the Court held an evidentiary hearing, taking testimony from two witnesses.

**Facts**

On July 27, 2008, at approximately 1:20 a.m., United States Park Police officer April Ramos was on patrol in a marked patrol vehicle driving westbound on Washington Boulevard in the Presidio in San Francisco. Transcript of Nov. 25, 2008 Hearing ("Tr.") at 3:9-10; 4:7-22. She was driving directly behind Defendant's car on Washington Boulevard near Immigrant Point, and there was another car in front of Defendant's car. Tr. 5:19-21; 7:16-20; 14:18-21; 20:23-25. She observed Defendant's car weave, or drift, to the right in and out of Defendant's driving lane approximately three times over the course of approximately one minute. Tr. 5:9-12; 7:10-12; 7:21-

1  24; 14:10-12; 15:4-6; 21:6-7.  There was nothing in the roadway that would have caused the vehicle
2  to weave.  Tr. 7:13-15.  Defendant did not signal prior to weaving outside of the driving lane.  Tr.
3  24:13-16.

4  Ms. Burrows, Defendant's girlfriend and a passenger in Defendant's car on July 27, 2008
5  (Tr. 26:12-24; 29:20-21), testified that rather than weaving out of the driving lane, Defendant was
6  attempting to park near Immigrant Point, once pulling off the road only to find a disabled person
7  parking space, and a second time to park.  Tr. 28:12-18; 29:22-25.  Ms. Burrows did not testify one
8  way or the other as to whether Defendant signaled before he pulled off the roadway to park.  Both
9  Defendant and Ms. Burrows had been drinking earlier in the evening at a nightclub.  Tr. 33:3-10;
10 35:20-36:5.  The Court found the testimony of Officer Ramos credible and did not credit the
11 testimony of Ms. Burrows, who as Defendant's girlfriend is understandably biased in his favor,
12 when it contradicted the Officer's.

13 Officer Ramos pulled Defendant's car over just beyond Immigrant Point.  Tr. 17:21-22.
14 Officer Ramos testified that Defendant made no effort to pull over and stop before Officer Ramos
15 activated her emergency lights and siren.  Tr. 21:15-21; 24:21-22.  Ms. Burrows testified that she did
16 not notice the police car lights until Defendant started to pull his car over to park (Tr. 28:24-29:1),
17 which is not inconsistent with Officer Ramos' testimony that Defendant pulled over after she
18 activated her lights and siren.

19 There is a bike lane immediately adjacent to the driving lane that separates the driving lane
20 from the shoulder on the right side of the road in the direction that Defendant was traveling.  Tr.
21 5:13-15; 6:14-7:5; 15:7-14; 16:21-25; 18:5-7; 18:16-20; 20:13-18; Defs.' Ex. 2.  Ms. Burrows
22 testified that there is a white line along the edge of the road separating the road from the shoulder
23 (Tr. 30:6-10), but she was not asked specifically about the existence of a bike lane and did not
24 specifically deny that one existed there.  The Court does not credit Ms. Burrows' testimony as
25 establishing that there is no bike lane, and instead credits Officer Ramos' testimony, which was
26 consistent throughout the hearing, about the existence of the bike lane.  Further, contrary to
27 Defendant's contention, Defendant's photograph, Exhibit three, is ambiguous at best as to the
28 existence of a bike lane.

2

**Discussion**

A police officer may make an investigatory detention where the officer has reasonable suspicion of criminal conduct. See Delaware v. Prouse, 440 U.S. 648, 653 (1979); Terry v. Ohio, 392 U.S. 1, 22 (1968). "Reasonable suspicion is formed by 'specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" United States v. Colin, 314 F.3d 439, 442 (9th Cir. 2002) ("An officer's inferences must 'be grounded in objective facts and be capable of rational explanation.'"). The subjective intent of a police officer in engaging in a Fourth Amendment seizure is irrelevant. See Tatum v. City & County of San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006) ("Under Devenpeck, the subjective reason that Officer Smith arrested Fullard is irrelevant so long as the available facts suggested that Fullard was committing a crime.") (citing Devenpeck v. Alford, 543 U.S. 146 (2004)). A court must look to the totality of the circumstances to determine whether the officer had a "particularized and objective basis" for suspecting criminal activity. Id. The officer "must be able to articulate more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000).

In this case, Officer Ramos had reasonable suspicion to conduct a traffic stop of Defendant's vehicle. Even if the Court credits Ms. Burrows' testimony that Defendant pulled off the roadway twice to park his car, the question is not what is in Defendant's mind, but what is in the officer's mind for purposes of reasonable suspicion. Here, Officer Ramos observed Defendant's car weave outside of the driving lane and into the bike lane three times within one minute, which, standing alone, can constitute reasonable suspicion. See United States v. Fernandez-Castillo, 324 F.3d 1114, 1120 (9th Cir. 2003) ("Our decision in [United States v.] Colin [,314 F.3d 439 (9th Cir. 2002)] expressly left open the possibility that 'pronounced weaving' or weaving for a 'substantial distance' might give rise to a reasonable suspicion that the driver of the weaving car is intoxicated, thereby justifying an investigatory stop-even though the officer does not observe the driver commit a traffic infraction."); United States v. Perez, 37 F.3d 510, 513 (9th Cir. 1994) ("Troopers Owens and Roll observed Perez's van pass them and weave back and forth across the fog line. The officers testified that they thought the van's driver was possibly either intoxicated or falling asleep at the wheel. As it

turned out, the van's steering was malfunctioning. Whatever the cause, the officers' decision to stop the van was one any reasonable highway patrol officer would make.") (overruled on other grounds as recognized in United States v. Mendez, 476 F.3d 1077 (9th Cir. 2007)).

Cases cited by Defendant in support of their motion are inapposite.  In United States v. Jimenez-Medina, 173 F.3d 752 (9th Cir. 1999), the question was whether there was reasonable suspicion to stop a vehicle for immigrant smuggling.  The court determined that several factors, including swerving within the driver's lane, did not support reasonable suspicion for a traffic stop. Jimenez-Medina is distinguishable because there was no evidence that the driver swerved out of the driving lane as in this case.  Further, the question there was whether there was reasonable suspicion for smuggling, and swerving within a lane would be weak evidence of that.  In fact, in Fernandez-Castillo, the court noted that weaving within a lane would not constitute reasonable suspicion for smuggling, but may for driving under the influence of alcohol:

> We are mindful of our circuit's pre- Arvizu precedent that the dissent cites for the proposition that "movement within one's own lane ... is not a sufficient ground on which to base reasonable suspicion." But these cases are distinguishable from the case before us. Each of these cases dealt with border patrol agents who suspected that a vehicle was transporting illegal immigrants or drugs. See United States v. Jimenez-Medina, 173 F.3d 752 (9th Cir.1999) (suspected illegal immigrant smuggling); United States v. Rodriguez, 976 F.2d 592 (9th Cir.1992) (same); United States v. Hernandez-Alvarado, 891 F.2d 1414 (9th Cir.1989) (suspected drug smuggling). It is perfectly understandable that swerving within one's own lane of traffic would not support reasonable suspicion of smuggling, which has nothing to do with impairment, but that it would support Officer Schock's reasonable suspicion that Fernandez was operating a vehicle under the influence of drugs or alcohol.

Fernandez-Castillo, 324 F.3d at 1120.

Similarly, United States v. Colin, 314 F.3d 439 (9th Cir. 2002) is distinguishable.  There, the court held that the officer lacked reasonable suspicion to stop the defendant for driving under the influence and lane straddling where: (1) there was no evidence that the vehicle crossed the lane line, only that it touched the lane line and traveled on the line for ten seconds; (2) the officer only observed the vehicle for 35-45 seconds and during that time; and (3) the vehicle signaled and changed lanes.  By contrast, here, the evidence shows that Defendant drifted outside of his driving lane three times over the course of one minute without signaling.

Further, even if weaving outside of the driving lane was insufficient to show reasonable suspicion, a violation of the California Vehicle Code can constitute reasonable suspicion for a traffic

stop. See, e.g., Whren v. United States, 517 U.S. 806 (1996) (holding that officer had reasonable suspicion where officer had probable cause to believe that there had been a violation of the vehicle code); United States v. Choudhry, 461 F.3d 1097 (9th Cir. 2006) (holding that parking violation provided the officers with reasonable suspicion to conduct an investigatory stop of the vehicle). Here, California Vehicle Code section 22107 provides that:

> No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement.

The undisputed evidence in this case is that Defendant did not signal when he pulled out of his lane. Therefore, Officer Ramos had reasonable suspicion to stop Defendant's car based on the violation of section 22107.

**Conclusion**

Accordingly, Defendant's Motion to Suppress is denied. This matter has been set for a status on December 23, 2008 at 10:30 a.m.

**IT IS SO ORDERED.**

Dated: December 19, 2008

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge